UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JUAN MIGUEL GOMEZ-PENA,

        Petitioner,

v.

                                    Case No. 3:25-cv-1287-MMH-MCR

SECRETARY, DEPARTMENT OF
HOMELAND SECURITY, et al.,

        Respondents.
_____

## ORDER

**I.    Status**

Petitioner Juan Miguel Gomez-Pena (Gomez[1]), an immigration detainee, initiated this action through counsel on October 27, 2025, by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (Doc. 1; Petition) with attachments (Docs. 1-1 through 1-12). When he filed the Petition, U.S. Immigration and Customs Enforcement (ICE) was detaining Gomez at the Baker County Detention Center. ICE is currently detaining him at Karnes County Immigration Processing Center in Kansas City, Texas (Doc. 11-2).[2]

---

[1] Petitioner refers to himself as "Mr. Gomez-Pena" and "Mr. Gomez." See Petition at 2; Reply at 4.

[2] See also Online Detainee Locator System, U.S. Immigration and Customs Enforcement, available at https://locator.ice.gov/odls/#/search (last visited Jan. 5, 2026).

Respondents filed a memorandum in opposition on December 8, 2025 (Doc. 11; Response) with attachments (Docs. 11-1 through 11-3), and Gomez filed a counseled reply (Doc. 12; Reply). This case is ripe for review.

## II.   Parties' Positions

### a. Gomez's Petition

Gomez is a Mexican citizen and national who entered the United States without inspection almost twenty years ago. Petition at 19; Doc. 1-1. He states he has lived in the country since then, marrying a United States citizen and having two United States citizen children. Petition at 2, 19. Gomez was the subject of a traffic stop on September 17, 2025, and ICE subsequently took him into custody. Id. at 16, 20, 25. Gomez asserts he is being illegally subjected to mandatory detention and denied a bond hearing under 8 U.S.C. § 1225(b). Id. at 2, 12, 16, 17, 21, 23, 29–30. Gomez contends he should instead be properly classified under 8 U.S.C. § 1226(a) and is thus entitled to an individualized custody determination. Id. at 2, 16, 18, 30. Gomez requested a custody redetermination, which the immigration judge denied, stating, "Immigration judges lack authority to hear bond requests or grant bond to aliens present in the United States without admission and in removal proceedings, based on the plain language of 8 U.S.C. 1225(b)(2)(A)[]. Matter of YAJURE HURTADO, 29 I&N Dec. 216, 228 (BIA 2025)." Doc. 1-5 at 4.

Gomez raises five claims for relief. First, Gomez alleges his mandatory detention violates the Immigration and Nationality Act (INA) and associated regulations (Count One). See Petition at 22–24. Next, he contends the government's refusal to provide an individualized bond hearing violates his Fifth Amendment Right to Due Process (Counts Two, Three, and Four). See id. at 24–28. Lastly, Gomez asserts that his continued detention without a bond hearing violates the Administrative Procedure Act (APA) (Count Five). See id. at 28–30. As relief, Gomez requests an immediate bond hearing or release from detention as well as injunctive and declaratory relief. Id. at 3, 30–31.

### b. Respondents' Response

Respondents acknowledge that "ICE is detaining [Gomez] under the mandatory detention provisions of 8 U.S.C. § 1225(b)(2)." Response at 4. But, according to Respondents, this Court lacks jurisdiction over Gomez's claims for three reasons. Id. at 4–10. Respondents first argue that 8 U.S.C. § 1252(g) strips this Court of jurisdiction, because "[t]he decisions and actions to detain [Gomez] (under either § 1225 or § 1226) arise from the commencement of removal proceedings." Id. at 7. Respondents next assert that 8 U.S.C. § 1252(b)(9)—the "Zipper Clause"—likewise strips this Court of jurisdiction. See id. at 8. And last, Respondents contend that Gomez failed to exhaust his administrative remedies prior to filing this case. See id. at 9–10. Alternatively,

Respondents address Gomez's claims on the merits, arguing that his detention is "statutorily required." Id. at 10–17.

### c. Gomez's Reply

In his Reply, Gomez asserts that he is a class member of the declaratory relief provided for in Bautista v. Santacruz, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3289861 (C.D. Cal. Nov. 20, 2025), and that the Court should grant the writ of habeas corpus on that basis. Reply at 3–6. Gomez also continues to argue that his detention should be governed by § 1226, rather than § 1225. Id. at 6–11. And Gomez asserts that the Court has jurisdiction over his Petition because he was not required to exhaust his administrative remedies first and because neither § 1252(g) nor the zipper clause strip the Court of jurisdiction since he is only contesting his detention. Id. at 11–14.

### III. Analysis

The Court first addresses Respondents' arguments that two statutory provisions — 8 U.S.C. § 1252(g) and § 1252(b)(9) — deprive this Court of jurisdiction to adjudicate Gomez's claims. Then the Court addresses Respondents' exhaustion argument. Because the Court rejects those arguments, the Court then addresses the merits of Gomez's claims.

### a. 8 U.S.C. § 1252(g)

Section 1252(g) states in pertinent part that "no court shall have jurisdiction to hear any cause or claim by . . . any alien arising from the decision

4

or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). "It is a 'discretion-protecting provision' designed to prevent the 'deconstruction, fragmentation, and hence prolongation of removal proceedings.'" Camarena v. Dir., Immigr. & Customs Enf't, 988 F.3d 1268, 1272 (11th Cir. 2021) (quoting Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 487 (1999)). Nevertheless, the provision "does not cover 'the universe of deportation claims.'" Id. (quoting Reno, 525 U.S. at 482). Indeed, the Supreme Court has explained that section 1252(g) should be narrowly read to encompass only the "three discrete actions that the Attorney General may take: her decision or action to commence proceedings, adjudicate cases, or execute removal orders." Reno, 525 U.S. at 482 (internal quotation marks and citation omitted). While "'many other decisions or actions' may be 'part of the deportation process,' only claims that arise from one of the covered actions are excluded from [court] review" by this section. Camarena, 988 F.3d at 1272.

Here, Gomez is not attacking ICE's decision to commence removal proceedings, adjudicate his case, or execute an order of removal. Indeed, Gomez does not have an order of removal. Instead, Gomez is attacking ICE's decision to treat him as an "applicant for admission" under § 1225(b), which imposes mandatory detention, rather than as a noncitizen under § 1226(a), which

5

permits a bond hearing before an immigration judge. Thus, the Court finds that § 1252(g) does not bar Gomez's claims.

### a.  8 U.S.C. 1252(b)(9) – the "Zipper Clause"

Under the "Zipper Clause," "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order." 8 U.S.C. § 1252(b)(9). But "§ 1252(b)(9) 'does not present a jurisdictional bar' where those bringing suit 'are not asking for review of an order of removal,' 'the decision . . . to seek removal,' or 'the process by which . . . removability will be determined.'" Dep't of Homeland Sec. v. Regents of the Univ. of California, 140 S. Ct. 1891, 1907 (2020) (quoting Jennings v. Rodriguez, 583 U.S. 281, 294-95 (2018)). The Eleventh Circuit has "clarified that the zipper clause only affects cases that 'involve[ ] review of an order of removal.'" Canal A Media Holding, LLC v. United States Citizenship & Immigr. Servs., 964 F.3d 1250, 1257 (11th Cir. 2020) (quoting Madu v. U.S. Att'y Gen., 470 F.3d 1362, 1367 (11th Cir. 2006)).

Here, Gomez does not have an order of removal. Nor is he seeking to challenge the decision to seek removal or the process by which removability will be determined. Instead, as found above, he is challenging his classification

under § 1225(b), which requires mandatory detention. Thus, § 1252(b)(9) does not bar this Court's review of his claims.

### i. Exhaustion

A petitioner does not need to exhaust administrative remedies if "the administrative body is shown to be biased or has otherwise predetermined the issue before it." McCarthy v. Madigan, 503 U.S. 140, 148 (1992). Recently, the Board of Immigration Appeals (BIA) found that immigration judges have no authority to consider bond requests from noncitizens who entered the United States without inspection "because aliens who are present in the United States without admission are applicants for admission as defined under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), and must be detained for the duration of their removal proceedings." Matter of Yajure Hurtado, 29 I. & N. Dec. 216, 220 (BIA 2025). Thus, the BIA has already "predetermined" the issue. Here, Gomez sought a redetermination of his custody, and the immigration judge denied the request on the belief that immigration judges lack the authority to consider such requests under Hurtado. Doc. 1-5 at 4. To require Gomez to seek review from the court that issued the Hurtado decision would

be futile.[3] District courts around the country, including some judges on this Court, have reached this same conclusion and declined to dismiss similar cases based on the alleged failure to exhaust. See Patel v. Hardin, No. 2:25-cv-870-JES-NPM, 2025 WL 3442706, at *3 (M.D. Fla. Dec. 1, 2025) (collecting cases). Considering the circumstances, the Court rejects Respondents' exhaustion argument.

### d. Merits

The underlying premise of Gomez's claims is that he should be classified under 8 U.S.C. § 1226(a) and afforded a bond hearing before an immigration judge instead of being mandatorily detained under 8 U.S.C. § 1225(b)(2). The Court examines each of these statutes in turn.

Section 1225 governs "applicants for admission," which the statute defines as "[a]n alien present in the United States who has not been admitted" or those "arriv[ing] in the United States." 8 U.S.C. § 1225(a)(1); see Jennings, 583 U.S. at 287 (noting that under § 1225, "an alien who arrives in the United States, or is present in this country but has not been admitted, is treated as an applicant for admission (internal quotation marks and citation omitted)). The

---

[3] Notably, Respondents' arguments are contradictory—on the one hand, they insist Gomez must exhaust his administrative remedies by appealing the denial of his request for a bond hearing, and on the other hand, they resolutely argue that he is statutorily required to be detained and is not entitled to the bond hearing he requested.

8

statute defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13). Immigration laws require applicants for admission to be inspected by immigration officers to determine whether they should be admitted into the country. Jennings, 583 U.S. at 287. Certain applicants are subject to expedited removal. See 8 U.S.C. § 1225(b)(1). But, as relevant here, § 1225(b)(2) "serves as a catchall provision," Jennings, 583 U.S. at 288, and provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained," 8 U.S.C. 1225(b)(2)(A).

On the other hand, section 1226(a) states: "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). The Attorney General "may continue to detain the arrested alien" or "may release the alien on bond" or "conditional parole." 8 U.S.C. § 1226(a)(1)-(2) (emphasis added). The Supreme Court has recognized that this section "applies to aliens already present in the United States." Jennings, 583 U.S. at 303.

"'For the past three decades,'" the government has recognized "this dichotomy." Lopez v. Hardin, No. 2:25-CV-830-KCD-NPM, 2025 WL 3022245,

9

at *4 (M.D. Fla. Oct. 29, 2025) (quoting Pizarro Reyes v. Raycraft, No. 25-CV-12546, 2025 WL 2609425, at *4 (E.D. Mich. Sept. 9, 2025) (appeal filed Oct. 24, 2025)). Indeed, it appears that "most noncitizens who entered without inspection that were placed in standard removal proceedings received bond hearings, unless subject to an exception." Pizarro Reyes, 2025 WL 2609425, at *8. On July 8, 2025, however, the government changed course when the Department of Homeland Security (DHS) issued the following guidance:

> An "applicant for admission" is an alien present in the United States who has not been admitted or who arrives in the United States, whether or not at a designated port of arrival. INA § 235(a)(1). **Effective immediately, it is the position of DHS that such aliens are subject to detention under INA § 235(b) and may not be released from ICE custody except by INA § 212(d)(5) parole.** These aliens are also ineligible for a custody redetermination hearing ("bond hearing") before an immigration judge and may not be released for the duration of their removal proceedings absent a parole by DHS. For custody purposes, these aliens are now treated in the same manner that "arriving aliens" have historically been treated.

ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission, AILA Doc. No. 25071607 (July 8, 2025). The BIA adopted and applied this policy in Hurtado, 29 I. & N. Dec. 216. But courts around the country have almost universally rejected the government's new interpretation of these regulations. See, e.g., Cetino v. Hardin, No. 2:25-CV-1037-JES-DNF, 2025 WL 3558138, at *3 (M.D. Fla. Dec. 12, 2025); Robles v. U.S. Dep't of

10

Homeland Security, No. 1:25-CV-1578, 2025 WL 3558128, at *6 & n.3 (W.D. Mich. Dec. 12, 2025); Martinez-Martinez v. Noem, No. 25CV2975-GPC(VET), 2025 WL 3552746, at *6 (S.D. Cal. Dec. 11, 2025) ("Given the Government's longstanding interpretation of §§ 1225(b) and 1226(a), the [c]ourt is further persuaded that 'seeking admission' applies to arriving aliens and not aliens who have entered without inspection and lived in the United States for years."); Aguilar v. Bondi, No. 5:25-CV-01453-JKP, 2025 WL 3471417, at *6 (W.D. Tex. Nov. 26, 2025) (concluding that "§ 1225(b)(2) applies to noncitizens 'seeking admission,' and § 1226 applies to noncitizens such as [the p]etitioner who are 'already in the country'"); Belsai D.S. v. Bondi, - - - F. Supp. 3d - - -, 2025 WL 2802947, at *5 (D. Minn. Oct. 1, 2025) ("Overwhelmingly, courts have rejected the interpretation offered by Respondents that § 1225(b)(2) requires the detention of all noncitizens living in the country who are 'inadmissible' because they entered the United States without inspection."); Pizarro Reyes, 2025 WL 2609425, at *7 (collecting cases). But see Mejia Olalde v. Noem, No. 1:25-CV-00168-JMD, 2025 WL 3131942, at *3 (E.D. Mo. Nov. 10, 2025) (finding that § 1225(a)(1) "explicitly includes more than just arriving aliens in the definition of 'applicant[s] for admission'"); Vargas Lopez v. Trump, - - - F. Supp. 3d - - -, 2025 WL 2780351, at *9 (D. Neb. Sept. 30, 2025) (finding that "just because [the petitioner] illegally remained in this country for years does not mean that he is suddenly not an 'applicant for admission' under § 1225(b)(2)").

The undersigned now joins the majority of courts and rejects Respondents' arguments that Gomez is subject to mandatory detention under § 1225(b)(2).

Here, the issue is whether an alien present in the United States who has not been admitted includes an individual, like Gomez, who entered the country without inspection and lived here for years without applying for admission. Like most other courts around the country that have faced this issue, this Court finds "the overall context of § 1225 limits the scope of the terms 'applicant for admission' and 'seeking admission' in § 1225(b)(2)(A)." Pizarro Reyes, 2025 WL 2609425, at *5; see also Jennings, 583 U.S. at 297 (recognizing that § 1225(b) "applies primarily to aliens seeking entry into the United States ('applicants for admission' in the language of the statute)"). Another judge on this Court recently explained:

> First, the text of the statutes suggests that § 1225 does not apply to aliens who have been in the United States for long periods. Section 1225 is titled: "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." Id. The use of "arriving" indicates that the statute governs incoming noncitizens, not those present already. This is supported by the text of the statute itself, which is focused on inspections for noncitizens when they arrive via "crewman" or as "stowaways." 8 U.S.C. § 1225(b)(2). These limited and more specific methods of entry suggest that § 1225 applies to noncitizens arriving at a border or port and are presently "seeking admission" into the United States.[4]

---

[4] One court provided the following analogy:

>Next, context and the Supreme Court's interpretation of these statutes point in the same direction. Courts are meant to "construe statutes, not isolated provisions." King v. Burwell, 576 U.S. 473, 486 (2015). As mentioned, the Supreme Court has identified § 1226 as the "default rule" applicable "to aliens already present in the United States." Jennings, 583 U.S. at 281, 288. "That Congress separated removal of arriving aliens from its more general section for 'Apprehension and detention of aliens,' § 1226, implies that Congress enacted § 1225 for a specific, limited purpose." Pizarro Reyes, 2025 WL 2609425, at *5. The Supreme Court has also observed that "our immigration laws have long made a distinction between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality. In the latter instance the Court has recognized additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'" Leng May Ma v. Barber, 357 U.S. 185, 187 (1958) (quoting Shaughnessy v. United States ex rel. Mezei, 345 U.S.

>This understanding accords with the plain, ordinary meaning of the words "seeking" and "admission." For example, someone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as "seeking admission" to the theater. Rather, that person would be described as already present there. Even if that person, after being detected, offered to pay for a ticket, one would not ordinarily describe them as "seeking admission" (or "seeking" "lawful entry") at that point—one would say that they had entered unlawfully but now seek a lawful means of remaining there. As § 1225(b)(2)(A) applies only to those noncitizens who are actively "seeking admission" to the United States, it cannot, according to its ordinary meaning, apply to [a noncitizen who] has already been residing in the United States for several years.

Lopez Benitez v. Francis, 795 F. Supp. 3d 475, 489 (S.D.N.Y. 2025).

13

> 206 (1953)); see also Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.").
>
> Third, when considering amendment of the INA in 1996, Congress again acknowledged that noncitizens present in the United States have more substantial due process rights than new arrivals. See H.R. Rep. 104-469, p.1, at 163-66 (recognizing "that an alien present in the U.S. has a constitutional liberty interest to remain in the U.S., and that this liberty interest is most significant in the case of a lawful permanent resident alien"). Following the amendment, federal regulations explained, "Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination." Inspection and Expedited Removal of Aliens, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). Finally, accepting Respondents' argument would leave § 1226 superfluous. Interpreting § 1225 to govern all noncitizens present in the country who had not been admitted leaves § 1226 with no apparent application. See TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.").

Cetino v. Hardin, No. 2:25-CV-1037-JES-DNF, 2025 WL 3558138, at *3-4 (M.D. Fla. Dec. 12, 2025); see, e.g., Lopez, 2025 WL 3022245, at *4-5 (applying the same reasoning).

It is undisputed that Gomez entered the United States without inspection and has been residing here for many years. Thus, he is not properly detained under § 1225(b)(2) as Respondents contend. Instead, his detention is governed by § 1226, and he is therefore entitled to a bond hearing before an immigration judge. See Bautista v. Noem, No. 2:25-CV-996-KCD-DNF, 2025 WL 3227482, at *1 (M.D. Fla. Nov. 19, 2025) (finding that the petitioner was entitled to a bond hearing—not immediate release because § 1226(a)(1) "'grants the executive branch discretion to determine whether to detain or release a noncitizen who is facing removal proceedings.'" (quoting Hulke v. Schmidt, 572 F. Supp. 3d 593, 596 (E.D. Wis. 2021)); see also Lopez-Arevelo, No. EP-25-CV-337-KC, 2025 WL 2691828, at *12 (W.D. Tex. Sept. 22, 2025).[5]

---

[5] Essentially, this Court is granting Gomez relief under Count One of his Petition—"Violation of 8 U.S.C. § 1226(a) and Associated Regulations." While Gomez raises other arguments, this Court has granted him the ultimate relief he seeks. Nevertheless, if Respondents fail to provide Gomez with a bond hearing or release him within the time allotted, he may renew his other arguments. Further, the Court does not address his argument that he is entitled to relief as a class member under Bautista, 2025 WL 3678485, as Gomez improperly raised the argument for the first time in his Reply and because the Court is granting relief under Count One of his Petition. See Herring v. Sec'y, Dep't of Corr., 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, '[a]rguments raised for the first time in a reply brief are not properly before a reviewing court.'" (citing United States v. Coy, 19 F.3d 629, 632 n.7 (11th Cir. 1994))).

Accordingly, it is

**ORDERED**:

1. Gomez's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Doc. 1) is **GRANTED to the extent** that by **January 16, 2026**, Respondents must either: (1) provide Gomez with a bond hearing under § 1226(a); or (2) release him. If Gomez is released, Respondents must notify his counsel of record in this case of the exact time and location of his release <u>no less than two hours before release</u>. The Petition is otherwise **DENIED without prejudice**.

2. No later than **January 20, 2026**, Gomez, through counsel, must file a notice advising of the status of his detention.

**DONE AND ORDERED** at Jacksonville, Florida, this 12th day of January, 2026.

_____
MARCIA MORALES HOWARD
United States District Judge

JaxP-12

C:   Counsel of Record

16